**ORDERED.**

Dated: August 12, 2022

_Grace E. Robson_
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | ) |
| | ) |
| Pedro Paul Benevides, | ) Case No. 6:19-bk-00671-GER |
| | ) Chapter 7 |
| Debtor. | ) |
| | ) |
| Lori Patton, | ) |
| | ) |
| Plaintiff, | ) Adv. No. 6:21-ap-00030-GER |
| | ) |
| v. | ) |
| | ) |
| Pedro Paul Benevides, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER DENYING
DISCHARGE PURSUANT TO 11 U.S.C. § 727(A)(4)(A) AND (B)**

This adversary proceeding came before the Court for trial on April 19, 2022, on the Amended Complaint[1] filed by the Plaintiff/Trustee, Lori Patton (the "Trustee"), seeking to deny the Debtor/Defendant, Pedro Paul Benevides (the "Debtor"), a discharge under § 727 of the Bankruptcy

---

[1] Doc. No. 24. All "Doc. No." citations refer to pleadings filed in the Adversary Proceeding, No. 6:21-ap-00030-GER, unless otherwise noted.

1

Code.[2] The Court, having considered the testimony of witnesses and documentary evidence, the record, and the parties' arguments, **FINDS, ORDERS, AND ADJUDGES as follows:**

## I.  BACKGROUND

A. On September 19, 2013, the Debtor was arrested based on a 19-count indictment.[3]

B. On or around February 7, 2014, after the United States of America filed a motion for the issuance of an arrest warrant and revocation of the Debtor's pretrial release and bond, the Debtor was incarcerated.[4]

C. On July 14, 2014, the Debtor signed a Plea Agreement to "enter a plea of guilty to Count One of the Indictment," which charged the Debtor "with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349."[5] A corrected plea agreement was entered on July 18, 2014.[6]

D. The bankruptcy case was initiated on January 31, 2019, when Kinetic Leasing, Inc., CenterState Bank, N.A., and North Tract LLC filed an involuntary petition against the Debtor under Chapter 7 of the Bankruptcy Code.[7]

E. At the time the involuntary petition was filed and the summons was served, the Debtor was an inmate of the United States Federal Bureau of Prisons.[8]

F. On February 14, 2019, the Debtor filed the *Debtor, Pedro Paul Benevides, Response to the Involuntary Petition Against an Individual*,[9] wherein the Debtor stated that he did not oppose the filing of the Involuntary Petition, but he believed that his "assets greatly exceed any creditor claims in this action. . . . The value of the assets at issue exceeds the sum of $100M."[10]

---

[2] Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.
[3] Pl.'s Ex. 1.
[4] Pl.'s Exs. 1 and 5; Trial Tr. 22:10-12.
[5] Pl.'s Ex. 6.
[6] Pl.'s Exs. 1 and 7.
[7] *Joint Pretrial Stipulation* ¶ 1, Doc. No. 49; Main Case, No. 6:19-bk-00671-GER, Doc. No. 1.
[8] *See* Trial Tr. 22:10-12, 32:4-11; *see also Joint Pretrial Stipulation* ¶ 4, Doc. No. 49.
[9] Pl.'s Ex. 40; Main Case, No. 6:19-bk-00671-GER, Doc. No. 19.
[10] *Joint Pretrial Stipulation* ¶ 5, Doc. No. 49; Pl.'s Ex. 40; Main Case, No. 6:19-bk-00671-GER, Doc. No. 19.

G. On February 21, 2019, Lori Patton was appointed as Chapter 7 Trustee.[11]

H. On February 22, 2019, the Debtor executed and sent to the bankruptcy court for filing the *Debtor, Pedro Paul Benevides, Response to Emergency Motion for Order Directing United States Trustee to Appoint Lori Patton as Interim Chapter 7 Trustee*, wherein he stated that he was seeking "affirmative relief for recovery of Debtor's assets."[12]

I. The Court granted several motions filed by the Trustee and Petitioning Creditors to extend the deadline to file schedules and statements.[13] As a result of the extensions, the deadline to file all schedules and statements was extended through July 12, 2019.[14]

J. On July 12, 2019, the Petitioning Creditors filed *Schedules and Statement of Financial Affairs*.[15]

K. In February and March 2020, the Debtor filed post-petition state court actions related to alleged property of the bankruptcy estate.[16]

L. On April 21, 2020, the Debtor was released from prison to a halfway house in the Orlando area, but he was still under supervision by the United States Federal Bureau of Prisons.[17]

M. At the initial 341 meeting of creditors on September 29, 2020, the Debtor testified that the schedules filed by the Petitioning Creditors "didn't list all [of his] assets."[18] He also testified that he "owned several properties . . . . I mean, dozens, you know, in the tens of millions of dollars."[19]

---

[11] *Joint Pretrial Stipulation* ¶ 6, Doc. No. 49; Main Case, No. 6:19-bk-00671-GER, Doc. No. 20.
[12] *Joint Pretrial Stipulation* ¶ 9, Doc. No. 49; Main Case, No. 6:19-bk-00671-GER, Doc. No. 30.
[13] Pl.'s Exs. 50, 51, 52, 53, 54 and 55; Main Case, No. 6:19-bk-00671-GER, Doc. Nos. 33, 36, 43, 45, 47 and 51; *see also Joint Pretrial Stipulation* ¶¶ 11-13, Doc. No. 49.
[14] *Joint Pretrial Stipulation* ¶ 13, Doc. No. 49; Pl.'s Ex. 55; Main Case, No. 6:19-bk-00671-GER, Doc. No. 51.
[15] Pl.'s Ex. 56; Main Case, No. 6:19-bk-00671-GER, Doc. Nos. 53 and 54; *see also Joint Pretrial Stipulation* ¶ 14, Doc. No. 49.
[16] *Joint Pretrial Stipulation* ¶ 20, Doc. No. 49; Pl.'s Ex. 101; Trial Tr. 111:6-112:23.
[17] *Joint Pretrial Stipulation* ¶ 19, Doc. No. 49; Trial Tr. 31:20-32:3.
[18] Pl.'s Ex. 150 at 31:7; *accord Joint Pretrial Stipulation* ¶ 15, Doc. No. 49.
[19] Pl.'s Ex. 150 at 6:21-22; *accord Joint Pretrial Stipulation* ¶ 16, Doc. No. 49.

N.     On October 7, 2020, the Trustee requested that the Debtor's attorney turn over records relating to the Debtor,[20] and that same day the Debtor provided the Trustee with pictures containing a list of "Bankers Credit Corporation Loan Portfolio of Properties" and a handwritten list of companies.[21] The following day, October 8, 2020, the Debtor indicated he had a large amount of documents such that a copier company would need to come and copy.[22]

O.     On January 14, 2021, the Debtor was released from the halfway house.[23]

P.     On February 17, 2021, the Trustee renewed her request to the Debtor's attorney to turn over documents.[24]

Q.     On March 1, 2021, the Trustee initiated this adversary proceeding.[25]

R.     On April 26, 2021, the Debtor filed and signed, under penalty of perjury, the following seven claims in the main bankruptcy case[26]:

    a. Roderic Lee Boling, Claim No. 56, in the amount of $6,576,000;

    b. Sabrina L. Benevides, Claim No. 57, in the amount of $5,000,000;

    c. Mercedes O. Benevides, Claim No. 58, in the amount of $5,000,000;

    d. Vinny P. Benevides, Claim No. 59, in the amount of $5,000,000;

    e. Deville Family Land Trust, Claim No. 60, in the amount of $5,000,000;

    f. MSVB Trust, Claim No. 61, in the amount of $5,000,000; and

    g. Benevides Irrevocable Family Trust, Claim No. 62, in the amount of $5,000,000.

---

[20] *Joint Pretrial Stipulation* ¶ 21, Doc. No. 49; Pl.'s Ex. 43.
[21] *Joint Pretrial Stipulation* ¶ 17, Doc. No. 49; Pl.'s Ex. 42.
[22] *Joint Pretrial Stipulation* ¶ 22, Doc. No. 49; Pl.'s Ex. 44.
[23] *Joint Pretrial Stipulation* ¶ 23, Doc. No. 49; Trial Tr. 44:19-21.
[24] *Joint Pretrial Stipulation* ¶ 24, Doc. No. 49; Pl.'s Ex. 48.
[25] *Joint Pretrial Stipulation* ¶ 25, Doc. No. 49; Doc. No. 1; Pl.'s Ex. 88. The Trustee filed an Amended Complaint on September 9, 2021. Doc. No. 24; Pl.'s Ex. 89.
[26] Pl.'s Exs. 81-87. The Debtor also listed these claims in his schedules filed in July 2021. *See* Pl.'s Ex. 69; Main Case, No. 6:19-bk-00671-GER, Doc. No. 205.

S.    On June 4, 2021, the Debtor filed *Defendant's Motion for Additional Time to File Schedules and Statement of Financial Affairs*.[27] The motion was granted, extending the deadline to July 30, 2021.[28]

T.    On July 30, 2021, the Debtor filed and signed, under penalty of perjury, Schedules and Statement of Financial Affairs.[29] This set of schedules lists the Debtor's ownership interests in multiple pieces of real property, motor vehicles, boat, and a prop airplane, among other assets.[30]

U.    On October 15, 2021, the Debtor testified at a Rule 2004 Examination.[31]

V.    On December 6, 2021, the Debtor filed Amended Schedules and Statement of Financial Affairs.[32] In contrast to the July 2021 schedules, the amended set of schedules reflects that the Debtor has no ownership interest in any real property, boat, or airplane. As to motor vehicles, the Debtor indicated he had a $1,000 interest in "[a]ny Motor Vehicles recovered by the Trustee."[33]

W.    The Debtor signed declarations under penalty of perjury that the schedules and statements he filed were true and correct.[34]

X.    The Court conducted a trial in this adversary proceeding on April 19, 2022.[35]

Y.    On May 24, 2022, the parties filed written closing arguments.[36]

---

[27] *Joint Pretrial Stipulation* ¶ 27, Doc. No. 49; Pl.'s Ex. 64; Main Case, No. 6:19-bk-00671-GER, Doc. No. 194.
[28] *Joint Pretrial Stipulation* ¶ 28, Doc. No. 49; Pl.'s Ex. 67; Main Case, No. 6:19-bk-00671-GER, Doc. No. 199.
[29] *Joint Pretrial Stipulation* ¶ 29, Doc. No. 49; Pl.'s Exs. 68-72; Main Case, No. 6:19-bk-00671-GER, Doc. Nos. 204, 205, 207, 209 and 210.
[30] Pl.'s Ex. 69; Main Case No. 6:19-bk-671-GER, Doc. No. 205.
[31] Pl.'s Ex. 152.
[32] Pl.'s Exs. 75-79; Main Case, No. 6:19-bk-00671-GER, Doc. Nos. 254-257.
[33] Pl.'s Ex. 79 at 3; Main Case, No. 6:19-bk-00671-GER, Doc. No. 259 at 3.
[34] Pl.'s Ex. 69 at 64; Main Case, No. 6:19-bk-00671-GER, Doc. No. 205 at 64; Pl.'s Ex. 79 at 14; Main Case, No. 6:19-bk-00671-GER, Doc. No. 259 at 14.
[35] Doc. No. 59.
[36] Doc. Nos. 63 and 64.

## II.    DISCUSSION

An individual Chapter 7 debtor will generally receive a discharge unless a plaintiff establishes one of the enumerated exceptions to discharge found in 11 U.S.C. § 727(a).[37] "Generally, objections to discharge should be construed liberally for the debtor and strictly against the objecting party."[38] However, "[t]he general policy that provisions denying such a discharge are construed liberally in favor of the debtor and strictly against the creditor applies only to the *honest* debtor."[39]

Section 727(a) lists the grounds upon which a debtor may be denied a discharge.[40] The party objecting to discharge has the burden to prove the objection by a preponderance of the evidence.[41] Once the objecting party has met its burden, "[t]he debtor must bring forward enough credible evidence to dissuade the court from exercising its jurisdiction to deny the debtor discharge based on the evidence presented by the objecting party."[42]

Here, the Trustee seeks denial of the Debtor's discharge under six provisions of § 727(a). As discussed below, because the Court concludes that the Trustee satisfied her burden on Counts V and VI of the Amended Complaint, which seek denial of discharge under § 727(a)(4)(A) and (B), the Debtor's discharge will be denied.[43]

---

[37] *See, e.g.*, *Welch v. LaPace (In re LaPace)*, 614 B.R. 911, 915 (Bankr. M.D. Fla. 2020).
[38] *Gargula v. Wright (In re Wright)*, 618 B.R. 569, 574 (Bankr. M.D. Fla. 2020) (first citing *Reynolds v. Trafford (In re Trafford)*, 377 B.R. 387, 392 (Bankr. M.D. Fla. 2007); and then citing *Coady v. D.A.N. Joint Venture III, L.P. (In re Coady)*, 588 F.3d 1312, 1315 (11th Cir. 2009)).
[39] *Jennings v. Maxfield (In re Jennings)*, 533 F.3d 1333, 1338-39 (11th Cir. 2008) (emphasis added) (citing *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 680 (11th Cir. 1993)).
[40] 11 U.S.C. § 727(a).
[41] *In re Jennings*, 533 F.3d at 1339 (citing *Grogan v. Garner*, 498 U.S. 279, 289-91 (1991)).
[42] *Id.* (alteration in original) (quoting *Law Offices of Dominic J. Salfi, P.A. v. Prevatt (In re Prevatt)*, 261 B.R. 54, 58 (Bankr. M.D. Fla. 2000)).
[43] Because "[a] finding against the [debtor] under any single subsection of section 727 is sufficient to deny him a discharge," *Protos v. Silver (In re Protos)*, 322 F. App'x 930, 932-33 (11th Cir. 2009), the Court will not address the remaining counts.

## A.     Denial of Discharge Pursuant to § 727(a)(4)(A)

Section 727(a)(4)(A) provides that: "The court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."[44] The purpose of § 727(a)(4)(A) is to ensure "that sufficient facts are available to all persons interested in the administration of the bankruptcy estate without requiring investigations or examinations to discover whether the information provided is true."[45]

To justify denial of the debtor's discharge for a false oath, the false oath must be "fraudulent and material."[46] A party seeking the denial of a discharge pursuant to section 727(a)(4)(A) must establish: (1) the debtor knowingly made a false statement under oath; (2) the debtor made the statement with fraudulent intent; and (3) the statement related materially to the bankruptcy case.[47]

    i.    <u>The Debtor Knowingly Made False Statements Under Oath</u>

"A false oath is complete when made."[48] "A false statement or omission on a debtor's schedules may constitute a false oath for purposes of § 727(a)(4)."[49] "Whether a debtor has made a false oath within the meaning of § 727(a)(4)(A) is a question of fact."[50]

Here, the Court finds that a significant number of properties and assets were listed in the Debtor's schedules that the Debtor knew did not belong to him as of the Petition Date. First, the Debtor declared under penalty of perjury in his July 2021 schedules that he alone held an equitable

---

[44] 11 U.S.C. § 727(a)(4)(A).
[45] *Rossi v. Dupree (In re Dupree)*, 336 B.R. 490, 494 (Bankr. M.D. Fla. 2005).
[46] *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991); *accord In re Wright*, 618 B.R. at 574; *In re Dupree*, 336 B.R. at 494.
[47] *See Jones v. Rumptz (In re Rumptz)*, No. 3:19-ap-86-JAF, 2020 WL 2462528, at *6 (Bankr. M.D. Fla. May 12, 2020) (citing *Shappell's Inc. v. Perry (In re Perry)*, 252 B.R. 541, 549 (Bankr. M.D. Fla. 2000)).
[48] *Searles v. Riley (In re Searles)*, 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004) (first citing *Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001); and then citing *Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 732-34 (B.A.P. 9th Cir. 1999)), *aff'd*, 212 F. App'x 589 (9th Cir. 2006).
[49] *Avren v. Daniel (In re Daniel)*, 613 B.R. 374, 381 (Bankr. M.D. Fla. 2020) (citing *Rutland v. Petersen (In re Petersen)*, 323 B.R. 512, 517 (Bankr. N.D. Fla. 2005)).
[50] *Cadle Co. v. Leffingwell (In re Leffingwell)*, 279 B.R. 328, 340 (Bankr. M.D. Fla. 2002) (quoting *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987)).

7

ownership interest in eight commercial condominiums in Palm Coast, Florida.[51] Yet, when he was asked about one of the parcels at the Rule 2004 Examination that took place less than three months after filing his schedules, he swore under oath that he had "no idea who owned it" as of January 31, 2019.[52] In fact, a foreclosure case was initiated against the eight commercial condominium properties in 2015, a foreclosure judgment was signed by the state judge on August 13, 2015, and the foreclosure judgment was recorded on March 28, 2016[53]—years prior to the January 2019 bankruptcy petition, and all of which was a matter of public record. The Debtor testified at trial that these properties were the "same eight commercial condominium properties reflected in [his] schedules."[54]

Second, the Debtor included in his schedules real property located at 14238 Corkwood Lane, Astatula, Florida 34705 (the "Corkwood Lane Property") with a value of $5,600,000.[55] His schedules declared that he alone had interest in the Corkwood Lane Property.[56] However, during the meeting of creditors conducted on September 29, 2020, ten months before the Debtor filed his schedules, the Debtor testified under oath that the Corkwood Lane Property was not owned by him personally or a corporate entity.[57] When asked about the Corkwood Lane Property at the Rule 2004 Examination that took place in October 2021, he stated that he knew sometime in the middle of 2015 during his incarceration that he no longer owned the property.[58] Furthermore, at trial, the Debtor testified the Corkwood Lane Property was foreclosed upon while he was incarcerated.[59] The Trustee

---

[51] Pl.'s Ex. 69 at 1; Main Case, No. 6:19-bk-00671-GER, Doc. No. 205 at 1; Trial Tr. 99:6-11. In response to the question of "Who has an interest in the property?," the Debtor checked the box for "Debtor 1 only."
[52] Pl.'s Ex. 152 at 48:18-20, 49:6-11, 52:3-4; Trial Tr. 99:23-100:18.
[53] Pl.'s Ex. 139.
[54] Trial Tr. 103:19-23.
[55] Pl.'s Ex. 69 at 2; Main Case, No. 6:19-bk-00671-GER, Doc. No. 205 at 2.
[56] Pl.'s Ex. 69 at 2; Main Case, No. 6:19-bk-00671-GER, Doc. No. 205 at 2.
[57] Pl.'s Ex. 150 at 15:2-17.
[58] Pl.'s Ex. 152 at 64:10-15.
[59] Trial. Tr. 104:23-105:17.

8

presented evidence to show a foreclosure action was filed in 2013, well before the Debtor's incarceration, and a Certificate of Title was issued on July 18, 2014[60]—four days after the Debtor's Plea Agreement. Another matter of public record.

Third, the Debtor declared under penalty of perjury in his July 2021 schedules that he alone had an equitable interest in four vacant lots in Lake County, Florida.[61] The vacant lots were subject to foreclosure actions that were initiated in 2013, and a few days after the Debtor's Plea Agreement, certificates of title were issued by the Clerk of Polk County.[62] Likewise a matter of public record. Additionally, at the Debtor's October 2021 Rule 2004 Examination, he stated that he did not own the four vacant lots in his name only.[63]

Fourth, the Debtor declared under penalty of perjury in his schedules that he alone had an equitable interest in real property located at Bee Meadow Court, Eustis, Florida 32736 (the "Bee Meadow Property").[64] While the Debtor testified at trial that the Bee Meadow Property "was taken" while he was incarcerated,[65] a certificate of title issued by the Lake County Clerk of Court on May 14, 2013,[66] shows that the Debtor did not own the property even prior to his September 2013 indictment and his February 2014 incarceration. Yet another matter of public record.

Fifth, in his July 2021 schedules, the Debtor declared under penalty of perjury that he had the "[r]ight to recover property in Portugal – 2 Motor Vehicles (1968 Ford Mustang, value $7,500 . . . ; 1999 Panoz, value $8,000); 19 ft boat ($6,500), Jetski $1,500; 2 ATVs, $3,000 . . . ."[67] However,

---

[60] Pl.'s Ex. 142; *see also* Trial Tr. 103:24-108:7.
[61] Pl.'s Ex. 69 at 2; Main Case, No. 6:19-bk-00671-GER, Doc. No. 205 at 2.
[62] Pl.'s Exs. 141 and 142. The foreclosure action involved real property located in several counties in Florida, including Lake County and Polk County. Pursuant to section 47.041 of the Florida Statutes, "[w]hen two or more causes of action joined arose in different counties, venue may be laid in any of such counties."
[63] Pl.'s Ex. 152 at 78:10-79:25.
[64] Pl.'s Ex. 69 at 4; Main Case, No. 6:19-bk-00671-GER, Doc. No. 205 at 4.
[65] Trial Tr. 122:4-7.
[66] Pl.'s Ex. 143.
[67] Pl.'s Ex. 69 at 7; Main Case, No. 6:19-bk-00671-GER, Doc. No. 205 at 7.

in his amended schedules filed in December 2021, the prior reference to vehicles and watercraft were replaced with a declaration under penalty of perjury that he had an interest to the extent of $1,000 as to "[a]ny Motor Vehicles recovered by the Trustee."[68] The inclusion of the assets in the July 2021 schedules directly contradicted the Debtor's sworn testimony at the initial 341 meeting of creditors held in September 2020, where he testified that he did not own any vehicles or personal property as of the Petition Date.[69] The Trustee also submitted ample evidence to prove that the Debtor knew he did not have an interest in these assets.[70]

Finally, the Debtor declared under penalty of perjury in his July 2021 schedules that he owned a 2009 Lamborghini Gallardo (the "Lamborghini") valued at $103,000.[71] However, in September 2013, a Bill of Particulars was filed by the United States of America listing "2009 Lamborghini Gallardo VIN # ZWGU54T19LA07775, titled in the name of Bankers Credit Group LLC."[72] Then, on August 7, 2014, in a case filed in the Circuit Court of the Fifth Judicial Circuit in and for Lake County, Florida, a Writ of Replevin was entered as to the Lamborghini in favor of Kinetic Leasing, Inc.[73] The judge in that case then entered an order that the Lamborghini was titled

---

[68] Pl.'s Ex. 79 at 3; Main Case, No. 6:19-bk-00671-GER, Doc. No. 259 at 3.
[69] Pl.'s Ex. 150 at 21:17-20.
[70] Pl.'s Ex. 93 (Exs. 11-12) (showing that in June 2012, a Motor Vehicle Security Agreement for the 1968 Ford Mustang was entered into between Brittany Benevides and BSTX, LLC); Pl.'s Ex. 96 (showing that in July 2013, the Debtor signed an Affidavit in Opposition to Kinetic's Second Motion for Receiver and attested that he had "never owned a 1968 Ford Mustang" or "a 1999 Panoz"); Pl.'s Ex. 93 (showing that in 2013, BSTX, LLC filed a lawsuit in Polk county to replevin the Mustang and foreclose its collateral assignment); Pl.'s Ex. 94 (showing that in March 2014, an Agreement was signed between LS27, LLC and BSTX, LLC and River Holdings of Central Florida, LLC, River Holding Group, LLC and Brittany Ann Sprauge-Benevides relating to the Mustang wherein it was agreed BSTX, LLC would have "immediate possession of the Mustang); Pl.'s Ex. 34 (showing that on February 3, 2015, the Debtor signed a Second Amended Martial Settlement Agreement and Amended Parenting Plan that stated that "[a]ny personal property in the sole name of the Wife [Brittany Benevides], or in the actual or constructive possession of the Wife shall be her separate property, and the [Debtor] waives any rights or claims to said property"); Pl.'s Ex. 35 (showing that on May 10, 2018, Orange County Circuit Judge Tanya Davis Wilson entered an order stating that the "martial settlement agreement is valid and enforceable"); Pl.'s Ex. 19 (showing that in June 2015, the Debtor filed a Motion for Permission to Appeal *In Forma Pauperis* and Affidavit and did not list any rights or ownership to vehicles in Portugal).
[71] Pl.'s Ex. 69 at 8; Main Case, No. 6:19-bk-00671-GER, Doc. No. 205 at 8.
[72] Pl.'s Ex. 3. The VIN for the Lamborghini was typed incorrectly in the Bill of Particulars. The VIN is ZHWGU54T19LA07775.
[73] Pl.'s Ex. 91.

in the name of Bankers Credit Group, LLC and that the Florida Department of Motor Vehicles shall prohibit the further transfer or alienation of the vehicle until further order of the Court.[74] On April 13, 2015, the Debtor, in his criminal case, submitted evidence that he no longer had ownership of two Lamborghinis,[75] and in his May 2015 Motion for Permission to Appeal *In Forma Pauperis* he did not list the Lamborghini.[76] Additionally, in October 2018, the Debtor emailed an individual while he was incarcerated and stated, "when you have the time find out how much it will cost to renew Bankers Credit Group LLC. I think I can get Rod [Bolin] to renew this LLC. This company owns the 2009 lambo that Kinetic has. I am going to have the car confiscated from Kinetic [at] some point."[77]

The Debtor, in December 2021, filed amended schedules under penalty of perjury reflecting that he had no ownership interest in any real property, boat, or airplane, and as to motor vehicles, the Debtor indicated that he had a $1,000 interest in "[a]ny Motor Vehicles recovered by the Trustee."[78] These amended schedules were filed after the Trustee filed the Amended Complaint in this proceeding based on the July 2021 schedules[79] and after the Debtor retained new counsel.[80] However, the December 2021 amended schedules do not negate that the Debtor knowingly made false statements under oath when he included the above-discussed assets in his July 2021 schedules.

    ii.    <u>The Debtor Made the Statements with Fraudulent Intent</u>

"Fraudulent intent must be shown by actual, not constructive fraud."[81] Absent direct evidence of actual fraud, the plaintiff may establish actual fraud by showing that the debtor has engaged in a

---

[74] Pl.'s Ex. 92.
[75] Pl.'s Ex. 14.
[76] Pl.'s Exs. 18 and 19.
[77] Pl.'s Ex. 152 (Ex. 17 to Rule 2004 Exam Tr.).
[78] Pl.'s Ex. 79 at 3; Main Case, No. 6:19-bk-00671-GER, Doc. No. 259 at 3.
[79] Pl.'s Exs. 79 and 89; Doc. Nos. 20 and 24.
[80] Pl.'s Ex. 39; Main Case, No. 6:19-bk-00671-GER, Doc. No. 253.
[81] *In re Leffingwell*, 279 B.R. at 350 (quoting *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 228 (E.D.N.Y. 2000)).

11

pattern of concealment or by showing the debtor's reckless indifference for the truth.[82] "A debtor's 'reckless indifference to the truth . . . has consistently been treated as the functional equivalent of fraud' for the purposes of denying a discharge."[83] The fraudulent intent in such a case may be inferred from the totality of the circumstances surrounding the debtor's case.[84]

The Debtor has demonstrated a reckless indifference for the truth. Specifically, the inclusion of the assets discussed above speaks to the Debtor's lack of candor regarding his financial affairs. While the Debtor contends that he listed these properties and other assets in his schedules because he believed they had been stolen from him, there was no proof that any assets had been stolen. On the contrary, the evidence proved that some of the real property listed in the schedules had been foreclosed upon through state court proceedings as early as 2013 and other properties had never been owned by the Debtor. The Debtor could have been forthcoming by including information in his schedules to reflect the historical nature and the Debtor's indirect interest in the assets; but rather than being candid and forthcoming in his financial affairs, the Debtor caused the Trustee to do an unnecessary amount of digging to get to the truth.

The Debtor, through email, told the Trustee that he wanted her to recover assets to pay creditors and for him to get any surplus.[85] However, the job of the trustee is not to find loopholes to recover assets that were legitimately foreclosed, forfeited, levied, or otherwise taken from the debtor years before the bankruptcy occurred. The Debtor may have been hoping for a windfall, but that is not the purpose of bankruptcy.

---

[82] *Id.* (first citing *Hatton v. Spencer (In re Hatton)*, 204 B.R. 477, 484 (E.D. Va. 1997); then citing *Haught v. United States (In re Haught)*, 242 B.R. 522, 525 (M.D. Fla. 1999); then citing *Fogal Legware of Switzerland, Inc. v. Wills (In re Wills)*, 243 B.R. 58, 64 (B.A.P. 9th Cir. 1999); and then citing *In re Murray*, 249 B.R. at 228).
[83] *Henkel v. Green (In re Green)*, 268 B.R. 628, 647 (Bankr. M.D. Fla. 2001) (alteration in original) (quoting *Smith v. Grondin (In re Grondin)*, 232 B.R. 274, 277-78 (B.A.P. 1st Cir. 1999)).
[84] *In re Wright*, 618 B.R. at 574-75; *In re Dupree*, 336 B.R. at 494.
[85] Pl.'s Ex. 99; Trial Tr. 9:1-10:13.

      iii.    <u>The Debtor's Statements Related Materially to the Bankruptcy Case</u>

Courts have recognized that "[i]n the context of § 727(a)(4)(A), materiality is conceived of broadly."[86] An oath is material "if it bears a relationship to the [debtor's] business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."[87]

The Court recognizes that, generally, a debtor's inclusion of property that he has no interest in would not materially relate to the bankruptcy case.[88] Nevertheless, this case involves "extraordinary circumstances" wherein the Debtor did not just include one or two assets in error, but instead included numerous assets[89] that he *knew* he no longer had any legal or equitable interest in. The Debtor's multiple misrepresentations in his schedules were material because they misled the Trustee and parties in interest regarding his business dealings, the discovery (or lack thereof) of assets, the existence and disposition of property, and ultimately had a detrimental effect on the administration of the estate.

The purpose of bankruptcy is to provide *honest* debtors with a fresh start.[90] The Debtor was not honest with the Trustee and failed to voluntarily provide complete or accurate financial

---

[86] *Murtaza v. Sigmund (In re Murtaza)*, No. 8:14-ap-01199-TA, 2016 WL 1383890, at *4 (B.A.P. 9th Cir. Apr. 5, 2016); *accord Schindler v. Milliron (In re Milliron)*, 629 B.R. 893, 916 (Bankr. D. Alaska 2021); *In re Leffingwell*, 279 B.R. at 348 (quoting *In re Wills*, 243 B.R. at 62) ("Materiality is broadly defined.").

[87] *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984).

[88] *Smith v. Smith (In re Smith)*, 489 B.R. 875, 895 (Bankr. M.D. Ga. 2013) ("[T]he estate has no interest in property the debtor has no interest in, and thus the inclusion does not materially relate to the bankruptcy case."); *Jackson v. Jackson (In re Jackson)*, 548 B.R. 353, 384 (Bankr. N.D. Ga. 2016) ("The alleged false statements at issue involve disclosure of an interest that the Plaintiffs claim the Debtor does not have. Given the purposes of Chapter 7 bankruptcy, such a disclosure cannot possibly be material or be made fraudulently."), *aff'd in part, appeal dismissed in part*, 724 F. App'x 905 (11th Cir. 2018); *see also Nat'l Income Tax Serv. v. Dorsey (In re Dorsey)*, No. AP 07-6666, 2008 WL 7842105, at *3 (Bankr. N.D. Ga. Apr. 18, 2008) ("While the disclosures, viewed very narrowly, may appear contradictory, they may be considered, alternatively, a form of cautious overdisclosure."); *Ceruti v. Woodhouse (In re Woodhouse)*, No. AP 15-2125, 2022 WL 628456, at *11 (Bankr. D. Utah Mar. 3, 2022) (finding that the debtor's listing an asset that he may have had an interest in was required and did not show fraudulent intent).

[89] While the Court is focusing on certain assets that the evidence shows the Debtor knew he no longer had an interest in, there were other properties and assets that the Debtor included in his schedules that he likely knew or should have known were not property of the estate.

[90] *E.g.*, *In re Green*, 268 B.R. at 644-45.

information. Because "[t]he veracity of a debtor's statements on his schedules is paramount in bankruptcy,"[91] the Court finds that the false statements in the Debtor's schedules—that he amended months later—caused the Trustee to spend an unnecessary amount of time and resources to get a clear and accurate picture of the estate.[92]

Therefore, the Court concludes that the Trustee proved, by a preponderance of the evidence, that the Debtor knowingly and fraudulently made false oaths in connection with the bankruptcy case pursuant to § 727(a)(4)(A).

    iv.    <u>The Debtor Failed to Bring Forward Credible Evidence</u>

The Debtor also has failed to bring forward credible evidence to dissuade the Court from exercising its jurisdiction to deny the Debtor a discharge.[93] While the Debtor argues that there is nothing to show the Debtor had an intent to defraud because "he was putting everything down that he knew he had when he went into prison,"[94] the Court does not find this argument persuasive. As discussed above, the Court finds that the Debtor demonstrated a reckless indifference for the truth, which is the "'functional equivalent of fraud' for the purposes of denying a discharge."[95] The Debtor purposefully and knowingly declared ownership of properties that he knew he did not have an interest in. This is not a case where the Debtor put down one or two pieces of contested property, but instead listed a voluminous number of properties that caused the Trustee to expend unnecessary resources. So, because the Trustee has met her burden and the Debtor has failed to dissuade the Court

---

[91] *Id.* at 648 (first citing *In re Chalik*, 748 F.2d at 618; and then citing *Mahon v. Milam (In re Milam)*, 172 B.R. 371, 375 (Bankr. M.D. Fla. 1994)).
[92] *See In re Hatton*, 204 B.R. at 482-83 (quoting *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987)) ("[Section 727] thus maintains the integrity of the bankruptcy process by insuring that neither the trustee nor the creditors needs 'to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.'").
[93] *See In re Jennings*, 533 F.3d at 1339 (quoting *In re Prevatt*, 261 B.R. at 58).
[94] Doc. No. 63 at 4.
[95] *In re Green*, 268 B.R. at 647 (quoting *In re Grondin*, 232 B.R. at 277-78).

14

from exercising its jurisdiction to deny the Debtor a discharge, the Court concludes it is appropriate to deny the Debtor a discharge pursuant to § 727(a)(4)(A).

### B.   Denial of Discharge Pursuant to § 727(a)(4)(B)

Section 727(a)(4)(B) provides that a debtor shall receive a discharge unless "the debtor knowingly and fraudulently, or in connection with the case—presented or used a false claim."[96] "The 'claim' in § 727(a)(4)(B) generally refers to 'bankruptcy "claims" as defined in 11 U.S.C. § 101(5) (i.e., rights to payments) rather than assertions, representations, and statements.'"[97] A plaintiff must prove that the debtor "presented or used an inflated or fictitious claim in a bankruptcy case, with intent to defraud."[98] "Section 727(a)(4)(B) claims are uncommon and 'generally involve the scheduling of non-existent debts, the scheduling of inflated debts, or the filing by the debtor of a false proof of claim.'"[99] Section 727(a)(4) seeks to prevent "knowing fraud or perjury," and courts must evaluate "challenged statements to determine whether they were part of a scheme to benefit the debtors at the expense of their creditors."[100]

As noted above, the Debtor filed seven claims under penalty of perjury. The claims were assigned Claim Nos. 56 through 62. Six of the claims asserted $5,000,000 was owed each claimant, who were the Debtor's children or trusts, and five of the claims directed payment to be sent to "614 E. Hwy 50 Ste 356, Clermont, FL 34711," which is the Debtor's address.[101]

---

[96] 11 U.S.C. § 727(a)(4)(B).
[97] *Crowder v. Wilbur (In re Wilbur)*, 574 B.R. 782, 798 (Bankr. N.D. Ga. 2017) (quoting *In re Jackson*, 548 B.R. at 385).
[98] *Looney v. Owens (In re Owens)*, No. AP 05-1706, 2006 WL 6589904, at *5 (Bankr. N.D. Ga. Feb. 3, 2006) (quoting *Painewebber Inc. v. Gollomp (In re Gollomp)*, 198 B.R. 433, 439 (S.D.N.Y. 1996)); *cf. In re Wilbur*, 574 B.R. at 798 (citing *Parnes v. Parnes (In re Parnes)*, 200 B.R. 710, 722 (Bankr. N.D. Ga. 1996)) ("Thus the question is whether Defendant engaged in conduct such as scheduling non-existent debts, inflating the amount of debts, or filing false proofs of claim.").
[99] *In re Woodhouse*, 2022 WL 628456, at *7 (quoting *Corcoran v. McCabe (In re McCabe)*, 543 B.R. 182, 192 (Bankr. E.D. Pa. 2015)).
[100] *Lafayette State Bank v. O'Steen (In re O'Steen)*, 581 B.R. 668, 678 (Bankr. M.D. Fla. 2017).
[101] Pl.'s Ex. 39; Main Case, No. 6:19-bk-00671-GER, Doc. No. 213.

The claims made on behalf of the Debtor's children were:

(1) a claim on behalf of the Debtor's adult child,[102] Sabrina L. Benevides, in the amount of $5,000,000, reflecting that payment should be sent to "12533 Leatrice Drive, Clermont, FL 34715";

(2) a claim on behalf of the Debtor's child,[103] Mercedes O. Benevides, in the amount of $5,000,000, reflecting that payment should be sent to "614 E. Hwy 50 Ste 356, Clermont, FL 34711"; and

(3) a claim on behalf of the Debtor's child,[104] Vinny P. Benevides, in the amount of $5,000,000, reflecting that payment should be sent to "614 E. Hwy 50 Ste 356, Clermont, FL 34711."

No supporting documentation was attached with these claims. The sworn basis of the claims was that the Debtor's children were "Beneficiar[ies] of Trust(s) stolen [were] by Brittany Sprague aka Brittany Benevides, Berry Walker and Cleveland Hightower"; however, there was no explanation as to why the Debtor was obligated or owed the debt reflected in the claims. In addition, none of these claims were marked as disputed in the Debtor's schedules.

The claims made on behalf of trusts were:

(1) a claim on behalf of the Deville Family Land Trust in the amount of $5,000,000, reflecting that payment should be sent to "614 E. Hwy 50 Ste 356, Clermont, FL 34711";

(2) a claim on behalf of the MSVB Trust in the amount of $5,000,000, reflecting that payment should be sent to "614 E. Hwy 50 Ste 356, Clermont, FL 34711"; and

(3) a claim on behalf of the Benevides Irrevocable Family Trust in the amount of $5,000,000, reflecting that payment should be sent to "614 E. Hwy 50 Ste 356, Clermont, FL 34711."

Similar to the claims asserted on behalf of the Debtor's children, no supporting documentation was attached with the filing of these claims. The Debtor's sworn basis of the claims was that "Trust[s] (including for children of Debtor) [were] stolen by Brittany Sprague aka Brittany Benevides, Barry Walker, and Cleveland Hightower"; however, there was no explanation as to why the Debtor was

---

[102] Trial Tr. 60:7-9.
[103] Trial Tr. 60:7-9.
[104] Trial Tr. 60:7-9.

16

obligated or owed the debt reflected in the claim. Like the other claims, none of these claims were marked as disputed on the Debtor's schedules.

Based on the evidence and the testimony admitted at trial, the Court finds the Debtor presented fictitious claims in the Debtor's bankruptcy case by filing six claims on behalf of his children and family trusts totaling $30,000,000. The Debtor admitted under oath that he never owed the debts reflected in these claims.[105] Accordingly, the Court finds that the Debtor "presented or used an inflated or fictitious claim in a bankruptcy case."[106]

In addition to the presentation of a false claim, in order to deny discharge under 11 U.S.C. § 727(a)(4)(B), the Trustee must prove that the Debtor had an intent to defraud.[107] As discussed previously, "[f]raudulent intent must be shown by actual, not constructive fraud,"[108] and the plaintiff may establish actual fraud by showing that the debtor has engaged in a pattern of concealment or by showing the debtor's reckless indifference for the truth.[109] Here, the Court finds that the Trustee has demonstrated the Debtor's reckless indifference for the truth.

The Debtor admitted that he never owed the debt reflected in these claims. Furthermore, as of the date of this Order, the Debtor has not sought to withdraw or clarify the claims.[110] The Court finds that the Debtor was playing "fast and loose . . . with the reality of [his] affairs,"[111] forcing the

---

[105] Pl.'s Ex. 152 at 112:10-19, 116:11-13, 121:22-24, 156:14-16; Trial Tr. 59:25-69:3.
[106] *In re Owens*, 2006 WL 6589904, at *5; *cf. In re Wilbur*, 574 B.R. at 798 (citing *In re Parnes*, 200 B.R. at 722) ("Thus the question is whether Defendant engaged in conduct such as scheduling non-existent debts, inflating the amount of debts, or filing false proofs of claim.").
[107] *Fido's Fences, Inc. v. Bordonaro (In re Bordonaro)*, 543 B.R. 692, 703 (Bankr. E.D.N.Y. 2016) (quoting *Perniciaro v. Natale (In re Natale)*, 136 B.R. 344, 349 (Bankr. E.D.N.Y. 1992)), *aff'd sub nom. Bordonaro v. Fido's Fences, Inc.*, 565 B.R. 222 (E.D.N.Y. 2017).
[108] *In re Leffingwell*, 279 B.R. at 350 (quoting *In re Murray*, 249 B.R. at 228).
[109] *Id.* (first citing *In re Hatton*, 204 B.R. at 484; then citing *In re Haught*, 242 B.R. at 525; then citing *In re Wills*, 243 B.R. at 64; and then citing *In re Murray*, 249 B.R. at 228).
[110] *See id.* at 352 ("Even were the court to credit this explanation and find the defendants' false oaths and omissions to be innocent and inadvertent—which it does not—it is important to point out that the defendants have made absolutely no attempt to amend their petition and schedules to correct the false oaths and omissions.").
[111] *In re Tully*, 818 F.2d at 110 ("[T]he very purpose of certain sections of the law, like 11 U.S.C. § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.").

Trustee to expend "significant resources" in order to fact-check "a less than forthcoming debtor."[112] The Debtor testified under oath that he knew he did not owe any monies to his children,[113] and yet in April 2021 the Debtor filed the six claims on behalf of his children and family trusts. The Debtor, by filing these claims, "forced the Trustee 'to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.'"[114]

The Debtor's false claims and the material inaccuracies in his schedules, taken together, display a "cavalier and reckless attitude in making the disclosures required."[115] While the Court cannot state with certainty why the Debtor chose to file the claims, it can be inferred that by scheduling and then filing claims totaling $30,000,000, he intended to reduce and dilute other unsecured creditor's share of the estate; additionally, by listing his address on the claim forms for where distributions should be sent, he hoped that the distribution payments would be sent to him.[116] Accordingly, the Trustee demonstrated the Debtor's reckless indifference for the truth, which is the "'functional equivalent of fraud' for the purposes of denying a discharge."[117]

The Debtor failed to offer a credible excuse to explain the filing of the false claims.[118] In his closing argument, the Debtor contends that "[a]n argument could be made that if the assets of those trusts were stolen by the Debtor's agents, the trusts could have a claim against the Debtor."[119] This argument is not credible. At the trial, when asked why he filed the claims, he said his ex-wife stole

---

[112] *New Falls Corp. v. Phillips (In re Phillips)*, No. 8:18-ap-00483-RCT, 2021 WL 819317, at *11 (Bankr. M.D. Fla. Mar. 3, 2021).
[113] Pl.'s Ex. 152 at 112:10-19, 116:11-13, 121:22-24, 156:14-16; Trial Tr. 59:25-69:3.
[114] *In re Green*, 268 B.R. at 649 (quoting *In re Hatton*, 204 B.R. at 482-83).
[115] *In re Leffingwell*, 279 B.R. at 351.
[116] *Pigott v. Cline (In re Cline)*, 48 B.R. 581, 584 (Bankr. E.D. Tenn. 1985) ("Proof of intent to defraud may be inferred from the facts."); *cf. Holland v. Sausser (In re Sausser)*, 159 B.R. 352, 356 (Bankr. M.D. Fla. 1993) ("While it is difficult to prove that a false oath was knowingly made, an inference of such intent can be drawn from circumstances surrounding the debtor.").
[117] *In re Green*, 268 B.R. at 647 (quoting *In re Grondin*, 232 B.R. at 277-78).
[118] *See In re Cline*, 48 B.R. at 585 ("No credible excuse, not even carelessness, is offered to explain filing the false claim.").
[119] Doc. No. 63 at 5.

his children's trust and "if [he got] a surplus after . . . the creditors [got] paid," he "wanted to make sure [his children] got something back."[120] The Debtor also has admitted that he did not owe his children money.[121] Furthermore, even if the Debtor argued he was confused as to the meaning of a claim, the Debtor was represented by counsel and could have consulted with his attorney prior to filing the claims.

The Court, having reviewed the evidence and assessed the demeanor of the witnesses, finds that the Debtor lacked credibility and his pattern of errors,[122] which he failed to give a credible explanation for, gives "rise to an inference of an intent to deceive."[123] Accordingly, the Court finds that the Debtor knowingly and fraudulently presented false claims and the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(B). For the foregoing reasons, it is

**ORDERED:**

1. The Debtor is denied a discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

2. The Debtor is also denied a discharge pursuant to 11 U.S.C. § 727(a)(4)(B).

3. A separate judgment consistent with this ruling will be entered.

# # #

Attorney Esther A McKean is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.

---

[120] Trial Tr. 53:6-16.
[121] Pl.'s Ex. 152 at 156:14-16.
[122] *See U.S. Trustee v. Varner (In re Varner)*, No. AP 14-6021, 2015 WL 4039390, at *6 (Bankr. N.D. Ohio June 30, 2015) (citing *LaRocco v. Smithers (In re Smithers)*, 342 B.R. 384 (B.A.P. 6th Cir. 2006)) (in deciding a § 727(a)(4)(A) cause of action, recognizing that "[o]ften, the ultimate outcome is dependent on the court's assessment of the debtor's credibility").
[123] *Rouse v. Stanke (In re Stanke)*, 234 B.R. 449, 458 (Bankr. W.D. Mo. 1999) (citing *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992)) ("A series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive.").